IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WIN AND SON, INC., ET AL. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, ET AL. | : | NO. 13-5977 |

<u>MEMORANDUM</u>

**Padova, J.**                                                                           **February 18, 2014**

Plaintiffs Win and Son, Inc. and Huan Yi Yu commenced this action against Defendants the City of Philadelphia (the "City"), the City of Philadelphia Department of Licenses and Inspection ("L&I") (collectively, the "City Defendants"), Synertech, Inc. ("Synertech"), Mr. D's Plumbing and Heating, Inc. ("Mr. D's"), and USA Environmental Management, Inc. ("USAEM"), alleging that Defendants demolished a building that Plaintiffs owned, without prior notice to Plaintiffs, and either sold or converted for personal use art and antiques that Plaintiffs had stored in the building. Defendants Synertech and Mr. D's have filed Motions to Dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, we grant their Motions in part and deny them in part.

I.      BACKGROUND

The Amended Complaint (the "Complaint") alleges that Plaintiffs own real property located at 1325 West Albanus Street in Philadelphia (the "Property"). (Am. Compl. ¶ 10.) Plaintiffs used the building on the Property to store approximately 7,000 pieces of valuable antiques and art pieces, including objects made out of wood, stone, glass, bronze, and porcelain, the combination of which was valued at more than $10 million. (<u>Id.</u> ¶¶ 11-12.) On March 16, 2011, Gerard James, an inspector with the Contractual Services Unit of L&I prepared an "Emergency Duty Report," stating that there had been a partial wall collapse at the Property. (<u>Id.</u>

¶ 14.)  On March 16, 2011, June 17, 2011, and June 18, 2011, the City Defendants attempted to send violation notices to Plaintiffs, but they mailed the notices to incorrect addresses.  (Id.  ¶¶ 15, 17, 19.)  Plaintiffs' "address for service" on file with the City's Department of Revenue and/or Bureau of Revision of Taxes was 136 Bowery Street, Unit 705, in New York City.  (Id. ¶ 13.)  Defendants did not, however, send the violation notices to the Bowery Street address.  (Id.  ¶¶ 15, 17, 19.)

On the same days that the City Defendants attempted to send violation notices to Plaintiffs (i.e., March 16, and June 17-18, 2011), they also sent copies of the violation notices to Mr. D's, Synertech, and USAEM.  (Id. ¶¶ 16, 18, 20.)  Mr. D's, Synertech and USAEM had all been certified as Local Business Entities pursuant to Section 17-109 of the Philadelphia Code, and had routine working relationships with the City Defendants.   (Id. ¶¶ 23, 25, 27, 29, 31, 33.)  On June 18, 2011, USAEM submitted a "Notice of Curbside bid" to the City Defendants, in which it proposed to provide demolition services at the Property, which the City Defendants had requested in their "Master Demolition Program Specifications."  (Id. ¶ 21.)

The City Defendants contracted with Synertech, Mr. D's, and USAEM to perform various services in connection with the demolition of the building located at the Property.  Specifically, Synertech entered into an "Asbestos Inspection contract," Mr. D's entered into an unspecified "services contract," and USAEM entered into a "demolition services contract."  (Id. ¶ 23, 27, 31.)   Work began at the Property on June 20, 2011, when Synertech began performing asbestos inspections.  (Id. ¶ 22.)  That same day, Plaintiffs learned for the first time that the Property was undergoing demolition.   (Id. ¶ 34.)   The next day, on June 21, 2011, Mr. D's began performing inspections at the Property, and USAEM won its bid to perform the demolition.  (Id. ¶¶ 26, 30.)  USAEM's demolition work was completed on September 6, 2011.

2

(Id. ¶ 32.)  Synertech's asbestos work was completed on October 26, 2011.  (Id. ¶ 22.)  Mr. D's completed its inspections and work at the Property on November 28, 2011.  (Id. ¶ 28.)

Before, during, and after the demolition, Defendants moved "valuable antiques and pieces of art that had been stored by the Plaintiffs within [Plaintiffs'] building onto the street to sell them, or to convert them for personal use."  (Id. ¶ 36.)  Plaintiffs sent a representative to investigate the demolition, and the investigator found that the Property was, in fact, undergoing "demolition, inspection, and the like."  (Id. ¶ 35.)  Defendants, however, did not permit Plaintiffs or their representatives to enter the remaining portions of the structure to attempt to salvage their valuable personal property.  (Id. ¶ 38.)  Plaintiffs also had no way to stop, postpone, or appeal the demolition or the decision to demolish the Property prior to the work being started and completed.  (Id. ¶ 44.)  Following the demolition, the City Defendants sent Plaintiffs a Notice of Abatement for work performed at the Property, which detailed the following expenses: $47,592.93 for demolition, $1,326.46 for asbestos onsite inspection, and $844.58 to "Seal Abandoned Lateral."  (Id. ¶ 45.)

The Complaint contains eight Counts, each of which is asserted against all five Defendants.  Counts I and VI assert negligence claims.  Counts II through V assert claims pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment for violation of Plaintiffs' (1) procedural due process rights (Count II); (2) substantive due process rights (Count III); (3) right to be free from unreasonable searches and seizures (Count IV); and (4) "civil rights" (Count V). Count VII asserts a conversion claim, and Count VIII asserts a trespass claim.  In connection with each Count, Plaintiffs seek a joint and several judgment against all Defendants in an amount in excess of fifty thousand dollars.

## II.     LEGAL STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick. 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  We take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff.  DelRio–Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011)).  Legal conclusions, however, receive no deference, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Main, 478 U.S. 265, 286 (1986) (cited with approval in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (alteration in original) (quotation omitted).  The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'"  Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. (quoting Twombly, 550 U.S. at 555). "Nor does a complaint

suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"   Id. (quoting Twombly, 550 U.S. at 557) (alteration in original)).    In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'"   West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

## III.   DISCUSSION

In their Motions, Mr. D's and Synertech argue that all eight Counts of the Complaint fail to state claims upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).

### A.   Count I

In Count I of the Complaint, Plaintiffs allege that Mr. D's, Synertech and the other Defendants negligently failed to provide Plaintiffs with notice of the alleged code violations at the Property and of the impending demolition of the Property.[1]   Under Pennsylvania law, the elements of a negligence claim are: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) a causal connection between the breach and the resulting injury; and (4) actual loss or damages.   Davenport v. Medtronic, Inc., 302 F. Supp. 2d 419, 439 (E.D. Pa. 2004) (citing Morena v. S. Hills Health Sys., 462 A.2d 680, 684 n.5 (Pa. 1983)).   "Whether a defendant owes a duty of care to a plaintiff is a question of law."   Huddleston v. Infertility Ctr. of America, Inc.,

---

[1] Plaintiffs also allege in this Count that Defendants "negligently determined that the premises at 1325 West Albanus Street was in imminent danger of collapsing."  (Compl. ¶ 52.) However, they ultimately assert in this Count only that Defendants breached a duty to provide notice, alleging: "As direct and proximate result of the Defendants' negligence . . . , the Defendants breached their duty to provide Plaintiffs' [sic] actual and proper notice as pled herein, which caused Plaintiffs to suffer damages . . . ."  (Compl. ¶ 53 (emphasis added).) Moreover, Plaintiffs do not argue in their responses to Defendants' Motions to Dismiss that they are pursuing a claim that Defendants negligently determined that the Property was in danger of collapse.  Accordingly, we do not interpret Count I of the Complaint to include claim based on that theory of negligence.

5

700 A.2d 453, 457 (Pa. Super. Ct. 1997) (quotation omitted).  Synertech and Mr. D's argue in their Motions to Dismiss that the Complaint fails to allege specific facts that would, if true, satisfy each of these elements, including that the Complaint fails to adequately allege that Synertech or Mr. D's had a legal duty to notify Plaintiffs of any code violations or the Property's impending demolition.

The Complaint, in fact, alleges that all five Defendants "had a duty to provide the Plaintiffs, property owners, with notice of any alleged code violation and the opportunity to correct such violations or repair any structural concerns prior to the building [on the Property] being demolished" and also had a "duty to provide Plaintiffs with actual . . . notice of the impending demolition."  (Am. Compl. ¶¶ 47, 50.)   It does not, however, contain any allegations regarding the source of these purported duties, and Plaintiffs provide no further information in this regard in their responses to the Motions to Dismiss.

Significantly, the Philadelphia Home Rule Charter provides that Defendant L&I is responsible for administering and enforcing "all statutes, ordinances and regulations for the protection of persons and property from hazards, in the use, condition, . . . maintenance, repair, . . . removal and demolition of buildings and structures." 351 Pa. Code § 5.5-1002(a)).  L&I's responsibilities in this regard include the duty, upon finding a violation of a statute, regulation, or ordinance, to "take . . . lawful action as may be necessary to correct the dangerous or unlawful condition."  Id. § 5.5-1002(d).   At the same time, Section PM–308.2 of the Philadelphia Code provides that, when an L&I code official believes that a property is in an imminently dangerous condition, the official must "serve on the owner, managing agent or person in control of the structure a written notice describing the imminent danger and specifying the required repair to render the structure safe, or requiring the imminently dangerous structure or portion thereof to be

6

demolished within a stipulated time." Philadelphia Code § PM–308.2. The Philadelphia Code further requires that "a copy of the notice . . . be posted in a conspicuous place on the premises." Id. § PM-308.3

Under these provisions, the law plainly requires L&I to provide notice to a building owner regarding code violations and any impending demolition of the owner's building. In contrast, Plaintiffs have not identified any legal authority that imposes a similar duty to notify on contractors that L&I or the City hires in connection with any demolition (such as Synertech and Mr. D's). We therefore conclude that Plaintiffs have failed to plausibly allege that Mr. D's or Synertech had a duty to provide the Plaintiffs with notice of any code violations or the impending demolition. Consequently, we grant the Motions to Dismiss insofar as they contend that Count I fails to state negligence claims upon which relief may be granted against Synertech and Mr. D's, and we dismiss the claims against Synertech and Mr. D's in Count I of the Complaint.

**B.      Counts II – V**

Counts II through V of the Complaint assert claims pursuant to 42 U.S.C. § 1983 for violation of Plaintiffs' constitutional and civil rights. In order to state a valid claim pursuant to § 1983, a plaintiff "must allege the violation of a right secured by the Constitution and . . . show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted). "Action under color of state law 'requires that one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Harvey v. Plains Twp. Police Dep't, 635 F.3d 606, 609 (3d Cir. 2011) (quoting Abbott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998)).

The United States Court of Appeals for the Third Circuit has stated that "[a]cts of private contractors do not become acts of the State simply because they are performing public contracts." Boyle v. Governor's Veterans Outreach & Assistance Ctr., 925 F.2d 71, 76 (3d Cir. 1991) (citing Rendell-Baker v. Kohn, 457 U.S. 830, 841 (1982)). We use one of three discrete tests to determine whether a private, non-state party has engaged in state action. Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009). The first test asks "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state." Id. The second test asks "whether the private entity has acted with the help of or in concert with state officials." Id. The third inquiry, often called the "joint action" test, examines whether "'the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.'" Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1142 (3d Cir. 1995)); Horton v. USA Envtl. Mgmt., Inc., Civ. A. No. 13-3352, 2013 WL 5377284, at *5 (E.D. Pa. Sept. 24, 2013) (citation omitted). All three of these tests for state action are "fact-specific." Kach, 589 F.3d at 646 (quoting Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995)).

Here, it is apparent that Plaintiffs are attempting to establish that Synertech and Mr. D's are state actors under the third test, i.e., the "joint action" test. Under this test, a § 1983 claim may be asserted against a private actor where the private actor invokes state power that it obtained under a state-created system that "permit[s] private parties to substitute their judgment for that of a state official or body." Horton, 2013 WL 5377284, at *5 (quoting Cruz v. Donnelly, 727 F.2d 79, 82 (3d Cir. 1984)). Thus, to state a claim upon which relief may be granted under this test, a "plaintiff must allege that the private actor was 'draped in the power of the state or that its judgment was substituted for the municipality's.'" Id. (quoting Sershen v. Cholish, Civ.

A. No. 07-104, 2008 WL 598111, at *7 (M.D. Pa. Feb. 29, 2008).   Synertech and Mr. D's argue that the Complaint fails to plead facts that give rise to an inference that they qualify as state actors under this test.

The Complaint alleges that all five Defendants were "government actors or working at the behest of government actors" (Am. Compl. ¶¶ 9, 73, 82, 88), and that they had a "jointly held goal to demolish Plaintiffs' building."  (Id. ¶ 20.)   In addition, the Complaint alleges, without any further detail, that Synertech and Mr. D.'s were permitted to substitute their judgment for that of the City, pursuant to their contractual relationships with the City.   (Id. ¶¶ 23-24, 27-28.) It also alleges that Synertech and Mr. D's are "drape[d] . . . with the power of the City of Philadelphia" by virtue of Section 17-109 of the Philadelphia Code, which permits the City's Procurement Department to certify a business as a "Local Business Entity." (Id. ¶¶ 24-25, 28-29.)

However, the Complaint alleges no facts to support these conclusory assertions that Mr. D's and Synertech were actually "drape[d] with the power of the City" or that the City permitted them to substitute their judgment for that of the City in connection with the demolition of the Plaintiff's property.  Rather, as noted above, the Complaint alleges only that, in connection with the demolition, Synertech contracted with the City to provide asbestos inspection services valued at $1,326.46, and that Mr. D's and the City entered into a "subject services contract," pursuant to which Mr. D's conducted inspections.[2]  (Id. ¶¶ 23, 26-27, 45.)   The Complaint does not

---

[2] Plaintiffs clarify in their motion papers that Mr. D's performed the service of "Seal Abandoned Lateral," for which the City issued the $844.58 abatement notice.  (See Pls.' Resp. to Mr. D's Mot. at 6 ("Mr. D's inspections and 'Seal Abandoned Lateral' were completed on November 28, 2011); see also Ex. B to Pls.' Resp. to Mr. D's Mot.)  However, this is not a fact that we can consider on a motion to dismiss, see Mayer, 605 F.3d at 230, and, in any event, even if Plaintiffs had alleged this fact in their Complaint, it would not affect our conclusion that Plaintiffs have failed to state claims upon which relief may be granted.

specifically describe the work done by Synertech and Mr. D's, much less describe any specific judgments that the City delegated to Synertech and/or Mr. D's pursuant to their contracts or otherwise. Moreover, the Complaint's allegations that Synertech and Mr. D's were certified as "Local Business Entities," which did regular work for the City, do not suffice to support a reasonable inference that the City either draped Synertech and Mr. D's with the power of the City or permitted Synertech and Mr. D's to exercise judgment ordinarily reserved for the City.

Under the circumstances, we conclude that the Complaint merely alleges that Synertech and Mr. D's were private contractors performing public contracts and does not plausibly allege that they were state actors under the joint action test. See Harvey, 635 F.3d at 609. Indeed, the Complaint's allegations regarding Synertech's and Mr. D's status as state actors are nothing more than "'labels and conclusions,'" and "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (alteration in original) (quoting Twombly, 550 U.S. at 555). We therefore conclude that Plaintiffs have failed to state cognizable § 1983 claims against Synertech and Mr. D's, and we grant the Motions to Dismiss insofar as they seek dismissal of the claims asserted against Synertech and Mr. D's in Counts II through V of the Complaint.[3]

---

[3]We recognize that, "in civil rights cases, district courts must offer amendment -- irrespective of whether it is requested -- when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007). Here, we will not permit amendment of Plaintiffs' civil rights claims against Synertech and Mr. D's because amendment of those claims would be futile. Plaintiffs have had two opportunities to set forth facts that would support cognizable § 1983 claims against Synertech and Mr. D's -- in their initial Complaint and in their Amended Complaint (which they filed after Defendants first argued in motions to dismiss the initial Complaint that Plaintiffs had failed to adequately allege that they were state actors) – and they have failed to do so. They have also suggested no new facts in their briefs in response to Defendants' Motions to Dismiss that they could add to a Second Amended Complaint to cure their pleading deficiencies. It is therefore plain that Plaintiffs' § 1983 claims against Synertech and Mr. D's are futile.

      **C.      Count VI**

      In Count VI of the Complaint, Plaintiffs assert a second negligence claim against all Defendants, contending that Defendants had a "duty of care not to disturb Plaintiffs' personal property," and that Defendants breached this duty of care by proceeding with the demolition of the building, when they knew or should have known that the property within the building would be destroyed by virtue of the demolition.[4]  (Am. Compl. ¶¶ 99-101.)  As noted above, the elements of a negligence claim under Pennsylvania law are: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) a causal connection between the breach and the resulting injury; and (4) actual loss or damages.  Davenport, 302 F. Supp. 2d at 439 (citing Morena, 462 A.2d at 684 n.5).  Synertech and Mr. Ds have moved to dismiss the negligence claims against them in Count VI, arguing that the Complaint fails to allege any facts that would support a conclusion that they themselves demolished the building (as opposed to merely performing discrete tasks involving asbestos removal and plumbing), or that they owed any legal duty to Plaintiffs in connection with the demolition.

      "It has long been hornbook law that a duty arises only when one engages in conduct which foreseeably creates an unreasonable risk of harm to others." Huddleston, 700 A.2d at 457 (quotation omitted).  Plaintiffs do not assert that Mr. D.'s and Synertech's actions in conducting inspections and sealing an abandoned lateral "created an unreasonable risk of harm to others."

---

[4] In their response to the Motions to Dismiss, Plaintiffs reiterate that Mr. D's and Synertech "had a duty of care to not to disturb Plaintiffs' substantial property stored within the building," but then argue that Synertech and Mr. D's breached their duty to Plaintiffs "by failing to provide notice of the violations they found with the knowledge that Plaintiffs' personal property within the building would be destroyed by virtue of the demolition." (Pls.' Resp. to Mr. D's Mot., at 11; Pls.' Resp. to Synertech Mot. at 11.)  While we do not read Count VI itself to be grounded on a duty to notify, we feel compelled to note in light of Plaintiffs' argument that, to the extent that Count VI is grounded on such duty, it fails to state a claim upon which relief may be granted for the same reasons that Count I fails to state a cognizable claim.  See supra at 5-7.

Id.  Rather, they appear to allege that, by virtue of performing these discrete tasks, the moving Defendants assumed responsibility for safeguarding Plaintiffs' personal possessions from any danger posed by the demolition of the Property.  However, Plaintiffs do not cite any legal authority that would support the imposition of a duty to safeguard Plaintiffs' possessions.  Under these circumstances, we conclude that Plaintiffs have failed to establish that Mr. D's or Synertech owed a duty to Plaintiffs that would support the negligence claims asserted against them in Count VI of the Complaint.

For the above stated reasons, we conclude that, in Count VI of the Complaint, Plaintiffs have failed to state a negligence claim upon which relief may be granted against either Mr. Ds or Synertech.  We therefore grant the Motions to Dismiss insofar as they pertain to claims asserted against Mr. D's and Synertech in Count VI.

**D.      Count VII**

In Count VII of the Complaint, Plaintiffs assert a conversion claim against all Defendants, contending that, during the wrongful demolition of the Property, Defendants sold, took or otherwise disposed of Plaintiffs' personal property.  (Am. Compl. ¶ 105.)  Count VII further alleges that "some of the antiques and artifacts . . . were sold on the street in front of the demolished building."  (Id. ¶ 108.)  Under Pennsylvania law, "'conversion is the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification.'"  Central Transport, LLC v. Atlas Towing, Inc., 884 F. Supp. 2d 207, 219 (E.D. Pa. 2012) (quoting Stevenson v. Economy Bank of Ambridge, 197 A.2d 721, 726 (Pa. 1964)).

Synertech and Mr. D's have moved to dismiss the conversion claims against them on the ground that the Complaint fails to articulate what they individually did or did not do to make

them liable for conversion.  At this early stage of the litigation, however, we will not dismiss the conversion claims on this basis.  The Complaint adequately alleges that, during the period in which demolition activities were taking place, someone with access to Plaintiffs' property converted the personal property that was stored within the demolished building, without Plaintiffs' consent or legal justification.  Prior to any discovery being conducted, we will not fault Plaintiffs for failing to identify the precise Defendants with access who actually converted their property.  We instead conclude that it is sufficient for Plaintiffs to allege that each Defendant had access during the relevant time period, and that someone with access converted their property.  We therefore deny Synertech's and Mr. D's Motions insofar as they seek dismissal of Plaintiffs' conversion claims in Count VII.

     **E.**     **Count VIII**

     In Count VIII of the Complaint, Plaintiffs assert a trespass claim against all Defendants, contending that Defendants "intruded onto Plaintiff's property" without privilege or license, "gained the knowledge that the property housed thousands of pieces of antiques and art pieces," and "damaged the . . . premises and its contents."  (Compl. ¶¶ 115, 116, 118.)  Under Pennsylvania law, the tort of trespass "is defined as an 'unprivileged, intentional intrusion upon land in possession of another.'"  Boring v. Google Inc., 362 F. App'x 273, 280 (3d Cir. 2010) (quoting Graham Oil Co. v. BP Oil Co., 885 F. Supp. 716, 725 (W.D. Pa. 1994)).  Thus, to state a claim for trespass, a plaintiff need only allege that a defendant "entered upon their property without permission."  Id. at 281. "There is no requirement in Pennsylvania law that damages be pled . . . ."  Id. (citations omitted)

     In their Motions, Synertech and Mr. D's ask that we dismiss the trespass claims against them on the ground that the Complaint does not contain factual allegations to support the claims.

However, the Complaint plainly alleges that Synertech and Mr. D's entered onto Plaintiff's property to perform work, and that Plaintiff had not granted them permission to do so. Accordingly, we reject Synertech's and Mr. D's arguments that Plaintiffs have not stated cognizable trespass claims against them, and we therefore deny their Motions insofar as they seek dismissal of those claims.

**IV.     CONCLUSION**

For the reasons set forth above, we grant Synertech's and Mr. D's Motions to the extent that they seek dismissal of the claims asserted against them in Counts I-VI of the Complaint, but deny their Motions insofar as they seek dismissal of the claims asserted against them in Counts VII and VIII.   An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.